16-0987, People v. Andre Holmes. And will Counsel on Holmes please approach? Tell us who you are and who you represent. Benjamin Wimmer of the State Appellate Defender's Office for Mr. Holmes. Good morning. My name is Mary Hassenbuehler, Assistant State's Attorney on behalf of the People. All right. And Mr. Wimmer, how much time would you like? We have read the briefs. We're familiar with the record. Ten minutes at the outside, I would think. Okay. And Ms. Hassenbuehler? I'd say the same amount of time, Mary. All right. All right. Mr. Wimmer, whenever you're ready. May it please the Court? This Court should reverse Mr. Holmes' conviction because the trial court erred in denying his motion to suppress the gun he was convicted of possessing. At an evidentiary hearing on the motion to suppress, all witnesses agreed that the police first discovered the gun by laying hands on Mr. Holmes' purse, which constitutes a tariff risk. Consequently, the State had the obligation at the hearing to produce evidence from which a reasonable fact finder could conclude that the police possessed reasonable, articulable suspicion that Holmes was armed at the time of the frisk. So let's go to the anonymous call, right? That was a tip that alerted the police. Receiving information from a third party, it's a tip. A security guard, right? Yes. A security guard got a tip. It wasn't a security guard. Was it somebody told the security guard? It's actually unclear from the record, which is the problem. It's possible that the security guard learned it from some additional source. The State's currently arguing that the security guard saw it himself. How do we know that? Well, I actually don't think we do. So if we don't know that, then we don't know anything, whether it was a third party security guard or somebody going up to the security guard. Correct. There's nothing in the record that would reflect the identity. We know that it's a security guard. Nothing presented at the hearing. And in light of that, there's just no way for a reasonable fact finder to conclude that this tip was more reliable than an anonymous tip. And whose burden is it to identify whether it was a security guard or somebody who came to a security guard? It's the State's obligation under People v. Cregan. Once the defense establishes that there was a Fourth Amendment right of privacy and that it was a search or seizure occurred and that there was no obvious illegality occurring at the time or no warrant presented, the burden shifts to the State to, in this case, to justify it. In this case, to establish that the police had reasonable articulable suspicion. The tip said there's a man, African American, about 5'7", 5'8", wearing a purple shirt, black jeans, with a gun in his pocket. Correct. Right. So when the police see Mr. Holmes in this park where nobody is permitted to have a gun, they go up to him, put a hand on his pocket, and the police officer feels the gun. Yes. So I'm confused about if the tip is from an identifiable security guard to the police and the tip is there's a gun in his pocket, what more were the police supposed to do before looking for and if they found him apprehending this man in a public park? Two-part answer. First of all, if the tip originated with the security guard and wasn't just relayed by the security guard, then it wouldn't be an anonymous tip. It would be based on observations of an actual particular person that's come to the police and Mr. Holmes concedes that if the record established that, that would be sufficient to establish reasonable suspicion. Additionally, regardless of whether or not Officer Delgado, as the person who actually performs the search, knows that at the time, it's fine even if Sergeant Wilkerson, knowing that he's got a non-anonymous tip, goes to him and says, look for this guy, search him, I got reason to believe he's got a gun. So Sergeant Wilkerson, when he's talking to the security guard, before he, in this park where there are 1,200 people, families and children, he gets a tip from a security guard describing a particular individual with a gun in his pocket. He should have said to the security guard, did you see it? If not, who told you? If it was a third party, direct me to that person so I can assess their credibility, before they go look for a man with a gun in a public park. The third part seems a bit extreme. The police don't need to, you know, analyze a person's credibility. Somebody came up to me and told me there's this guy with a gun in his pocket. What more do the police know then than if they hear it from the security guard who says there's a guy with a gun in his pocket? What they know is that a person has come forward and he can probably be located again. This was brought up by the state in their brief, the case People v. A.V. When a person is physically present, you know, for instance in the confines of the park, the distances aren't as clearly established in this case as they were in A.V. In A.V., it was multiple people came up to police 200 feet away. What the court ruled in that case is because the person is effectively physically present, they can be located again. They've given up their anonymity. And the important thing about an anonymous versus non-anonymous tip isn't that the police, you know, gain the ability to, you know, look into a tipster's eye and know whether or not they're telling the truth. That's important to a trial because we need to have some way to, you know, decide disputes in testimony. But what's important in the reasonable suspicion context, in the probable cause context, is that a person has been willing to come forward and potentially expose themselves to consequences if it later turns out that they deliberately, you know, told a falsehood to the police. So to jump back to your question of a minute ago, which is this person comes to security guard, alerts the police, you just call it, say comes up to him, just says, man with a gun, something, something, supposed to touch hide this thing. He's like, response like, did you see it or how do you know? That's fine. Then you're off to the races. Wait a minute. If the security guard says, somebody just came up to me, described this guy and says he has a gun in his pocket, the police are supposed to do what? At that point. Nothing. No, at that point you are ready to go for a Terry Stop and Frisk. Why? So if I understand your position, if the security guard had seen the man with the gun. Yes. That's okay because he's not anonymous. And if the security guard had said to the police, somebody just came up to me, gave me this description and said there's a guy with a gun in his pocket, that's okay too. So both of them are okay, but because we don't know which one occurred here, it's all out the window. More than that could have happened. The person could have driven by in a car, in which case it would be doubtful whether or not you could locate him again. For all we know, he could have gotten called on the phone. He could have had a person. Helped a security guard on the phone? It's possible. He also could have. People have cell phones. It's not in the record whether or not he has a phone. So I'm just trying to understand your position. I think you said if the security guard said to the police, I saw this guy with a gun in his pocket, we're good to go. No question that Terry's stop was appropriate. And if the police had said to the security guard, how do you know, and the security guard said, somebody just came up to me and told me about this guy with a gun in his pocket, that's okay too. If the guy says, I saw, the guy came up to me and told me he saw a guy with a gun, yeah, that would be okay. So it's the words I saw. If the third party comes up and tells the security guard, that guy over there with the purple shirt and black jeans has a gun in his pocket, that's not okay because he didn't say, I saw it. Correct. Or if he comes up and says. The police are supposed to do nothing. I mean, I guess. No, no, no. It's not. Not nothing is set forth in the briefs. I mean, if you get a tip that isn't enough on its own to warrant a stop and frisk, the police aren't completely helpless. There are tips that need to be investigated before you can. How do they investigate? The security guard says, somebody came up to me and pointed out a guy says there's a gun in his pocket. Didn't say they saw it. Well, step one is obviously to find the guy. Find the tipster. Find the person matching the description. Before you get there, though, the tipster comes up to the guy and runs away. Does that change it? At that point, I think it actually might. Isn't that the question here? We don't know. But what's important is reliability. Isn't that really what the Supreme Court of the United States has said in J.L. was what's important is, you know, anonymous tips like on a 911 call or something, you can go back and identify because there's ways to trace it. But there's no way to trace. I mean, a pure anonymous tip where you can't go back and we don't know who said it, that isn't enough. Right. And essentially it's. But you just said that, well, if somebody comes up and says, I just saw somebody with a gun and runs away or we don't, you know. Well, if he runs away, that creates a different problem. A.B. had a situation where there were multiple tipsters all hanging out. But this situation, all we know is a guy calls the police. Right. And without more, you don't know what the ultimate source is. There's no reason. So without knowing the ultimate source, the case law says. The case law says, you know, there's no reason to believe it's more reliable than an anonymous tip. It's not reliable at all. In the Fourth Amendment. Yeah. It's not enough to support the stop and frisk. Nobody actually saw the gun. Nobody said, I saw a man and I saw the gun. Correct. Whatever the chain of tipping was, could have been one person telling the security guard or it could have been like they gave a post office where six people told each other. Telephone. And the last one told the security guard. But somehow or another, the security guard got the idea that this man with the purple shirt had a gun in his pocket. The security guard did not have the idea that someone actually saw the gun. And the security guard didn't see the gun. There's nothing in the record to establish that he did. Again, you know, for all we know, maybe he did. But there's just no evidence presented. So the cops have it. Now they have the security guard, you know, somebody who's supposed to be trustworthy, a park, dangerous place with a gun. And they approach this man with the purple shirt. And they say, excuse me, sir, can we ask you some questions? And he runs, no question about it. Yeah. And he stands there and he says, no, I don't want to answer your questions. Then what? Well, at that point, they've got a problem if they've taken that tack. I mean, they can keep watching him. They can hang out with him. The police have as much right to be there as anybody. I mean, if they have nothing else to do. But they didn't do that. No, they didn't do that. There's also the possibility that instead of just going up to him and straight up trying to, you know, sort of bare face him and finding out whether he has a gun, they could continue to watch him and see if he does something that might confirm that he has a gun. If he starts, you know, approaching somebody belligerently, like he's looking for a fight. Or a furtive movement or throwing something away. Something that would corroborate the tip. And what would the liability of the police department be when people found out that they knew about this gun and they decided just to follow the guy until he pulled it out and shot somebody? In terms of liability, it would be nothing under Ducheney versus Winnebago County. But, I mean, ultimately, even if, you know, liability could be imposed in that situation, they can't be held liable for not conducting a terrorist risk because the Constitution doesn't permit them to do that. At the park at that time there were 1,200 people at some kind of gathering. Yes. Do we know what the gathering was or who was there? I mean, the phrase used was annual grand picnic. Beyond that, we don't really know. We know there was, I believe the number was about 1,200 people. Yes, 1,200. Yeah, so presumably that's fairly crowded. I've looked at Google Maps. The description was black, purple shirt. Black pants. Five foot six. Black pants, purple shirt. A lot of people going to a gathering could be wearing black pants and purple shirt. Well, I mean, we haven't presented the claim that the, you know, tip wasn't specific enough to identify a particular person. But it has in the case law said that just because it matches the description, that's not enough? That's exactly. Under J.L., I mean, the J.L. tip was sufficient to identify a particular person. Because the police see somebody walking with black pants and a purple shirt, they didn't notice anything. They went right up to him, didn't say a thing, and touched his pockets. Actually, there was testimony that they were, like, doing some sort of introduction thing at the moment. They touched his pockets. But, yeah. But he didn't run or anything.  There was nothing confirming the tip prior to the frisk. Yes. I mean, in light of that, the trial court erred in failing to suppress the gun. Without the gun, there's no way a conviction could be had in this case. So this court should reverse Mr. Holmes' conviction. Unless the court has any more questions at this point. Thank you, Mr. Wimmer. Ms. Hatzenbuehler. Good morning again. May it please the court. Your Honor, the information in this case was that the park security guard observed the man, male, black, 5'6", 5'8", purple shirt, black jeans, with a gun. Where is that? Not only is it in the questioning when they were questioning Officer Delgado, did you tell where he had learned that information from? Yes. Where did he learn it from? From a park security guard, an identifiable person. Did he relate to you whether the park security guard himself had seen this person with the gun? Yes. And reasonable interpretation. Did he relate to you whether the, that doesn't, that's a yes or no, that doesn't say yes. It's a compound question. It's a compound question. We don't know the answer. But it's yes to both. And that's our position, Your Honor. Well, that's your position, but it's not clear. Yes to both. But that is also confirmed. Did he relate? What did he relate? That's the next question. They didn't ask the next question. They did not ask the next question. So we don't know. So the question was, did he relate to you whether or not he observed the weapon? We don't know whether or not. We don't know. This is confirmed, though, by the complaint that was also, if you look at the common law record, and you can consider the whole record in this case, the complaint that had been filed in this case states the arresting officers met with B220, who stated that the park security guard observed a male wearing a purple shirt of black pants. But there's a reason that we prefer testimony. There's a reason why we look at the testimony. And in his testimony, the officer said the security guard did not say that he had seen the gun. He saw the man with the purple shirt, but the officer did not say in his court testimony that the security officer told him he saw the gun. So the police report really isn't relevant at this point. Well, it confirms that, in fact, because it is a compound sentence. And I agree with you, though. I agree. But I wish that the second question had been had. There's a reason the police reports were not in the record or not evidence. That's right. That's right. But it's our position that the park security guard observed the person wearing the purple shirt and the black pants with the weapon. Additionally, a park security guard is identifiable. All the evidence showed that Wilkerson did speak to the park security guard. So why didn't you identify him? Pardon me? Why didn't you identify him? Why did Wilkerson not? Why didn't the state identify him? Identify the park security guard? Yes. Because we were not provided with the name of the park security guard at this time. You could have found it. At some point. But we met our burden. Our burden was to show, after the defendant established his burden on a motion to suppress, our burden was where do we get the information that a park security guard observed this person with the weapon. Again, it's not clear he observed. So you keep saying observed. You even agree it's not clear. So, you know, that is one of the cruxes of this case. Right. Because we don't know. This is an anonymous tip. We don't know who this person is. We don't know what he or she may have observed. That's the problem. Because doesn't J.L., the Supreme Court of the United States, say we've got to look at the veracity? We've got to be able to have some kind of basis to determine reliability. Well, it's our position that it's not an anonymous tip. But let me get back. The ultimate burden is on. Well, it's not anonymous. What's the man's name or the woman's name? It's a park security guard. And it's in a park where there is an annual park. The Chicago Park District provides security. There's 1,200 people in a park at an annual picnic. He is the park security guard. The sergeant said a park security guard told me. He didn't say an anonymous person told me. He didn't say the park security guard heard from somebody else. He said a park security guard told me. This happened in a park. The officers went to the park, immediately getting this information. Within two and three minutes, he, the defendant, was carrying a weapon in a crowded park. Wait, wait, wait. They didn't know he was carrying a weapon. He was given information that he was. Did they know he was carrying a weapon? He was walking. He matched the description. A lot of people match descriptions. Right. I submitted this case. I was the first person that they saw who matched the description. And based on the information they had, they had a reasonable, articulate suspicion that this defendant matched the description of the person with a gun in his pocket. The security guard did not testify. The security guard did not testify. But, Your Honor, we met our burden. The ultimate burden is on the defendant. If there is an anonymous tipster there, they could have presented Sergeant Wilkerson, anybody else. We met our burden to show that these officers had a reasonable, articulate suspicion that this person had a weapon in his pocket in a crowded park. Does the record indicate that the police officers actually spoke in person to the security guard or that they talked to him on the phone? No. And they talked to Sergeant Wilkerson. The security guard physically spoke to Sergeant Wilkerson. Sergeant Wilkerson told them that he learned from a park security guard about. Did he say how he learned it? No, but it's irrelevant how he learned it. No, it is relevant because anybody can pick up a phone and say, I'm a park security guard. How is he going to get Sergeant Wilkerson's phone number? I mean, let's look at what's going on here. A park security guard, Sergeant Wilkerson, the police officers, they're all law enforcement. They're working together to protect this park. I mean, I know, I'm sorry, Your Honor. You're right. You're right. But what my position, our position is, Your Honor, is that an unknown tipster, there's no evidence of that, and if it was an unknown tipster, he didn't get the phone number for Sergeant Wilkerson to call him and say, this is what I saw. Well, let's play out Mr. Wimmer's hypothetical, that it was somebody who came up to the security guard and said, you know, that guy over there, or I just saw the description of Holmes, and I saw a guy with a gun in his pocket. Is that different? Well, I think in our position, if this Court finds that this was an anonymous tip, that this anonymous tip was reliable to establish reasonable suspicion because it had an issue of reliability, the fact that the person was walking in the park. This is predictive movement, that the person who's observed or who had the weapon was in the park. But that's not enough. The fact that somebody's walking in a park is not enough. Don't they have to have some kind of illegal activity, right? They didn't see any illegal activity. He was walking in a park. But they received information. They don't know where they received it. We don't know where they received it, how it was received, who gave this information. There's no way to verify that. All they know is they were walking in a park and somebody matched pants and shirt. But if the park security guard had received information from somebody else, he would not have told the police officer that he met and that he had observed a male. We don't know that. We've gone over that. I know we have, but I'd say it's a fact. Let's get beyond that. So, but still, they didn't see a gun on him, did they? You're right. Okay. You didn't see the gun. But, again, let's look at the totality of circumstances. So, yeah. Known to the police officers at the time. The information that the sergeant gave them, we all know what the identifiers or the description was. That's not enough. We know that's not enough. This person's in the car in the park with a gun in the pocket. We don't know that. They didn't know that. They had to stop him and touch him to find out. He didn't do anything illegal. Walking in the park is what he was doing. If he was walking down the street, that would be no different. Walking down the street would be, in this instance, a little bit different. Because now we're down the street, but in this instance, we have a crowded park. People expect to be safe in these crowded parks. That's why you have a park security guard. A lot of people walk in parks, but that doesn't mean you can stop anybody you wish. Just because somebody says to somebody else, to somebody else, a person has a gun. But, again, it's a park security guard. That doesn't change a thing, because we don't know if the park security guys saw it or not, do we? Well, our position is, at the record, if you look at that compound sentence, he could have said, yes, yes, but the officer hearing it and That's the problem with compound sentences. As long as we know that, yeah. You're correct. But it's our position that the officers did have a reasonable, articulate suspicion to stop the defendant to recover the gun and to do a protective frisk. He was armed with a weapon, security of the park. The totality of the circumstances, the court should review. Unless you have any further questions, The rest of our arguments are brief, and we ask that you affirm the denial of the motions. All right. Thank you, Ms. Hatzenbuehler. Mr. Wimmer. Just two brief points. One, to respond to the argument that the tip contained predictive information, in that the tip said that the person in question would be walking in the park. First of all, I mean, the tip was actually only that he was in the park. Even if it had, the tip had said he was walking. The important thing about predictive information is that it creates a circumstantial, you know, inference that the person knows about concealed criminal activity. For persons in the park. And it's different if they say he's in the park and he's walking in the park? I don't. There's no difference between those two things, to be honest. I mean, like, it's just, there's nothing about the fact that he's in the park or walking in the park that would suggest that, you know, a person necessarily had some way of having knowledge about concealed criminal activity. It's similar to. The context here, which I understand the state to be arguing, is different from somebody driving a car on the street, not committing any general traffic violations, somebody walking down a public street not doing anything apparently illegal, and somebody in a public park reported to have a gun where no one is permitted to have a gun. I mean, doesn't the context matter? Well, the context actually wouldn't separate the two other examples you've just provided. If you've got a tip that there's cocaine in a car being driven down the street, nobody's allowed to have cocaine anywhere. Similar situation applies here. Nobody's allowed to have a gun. In both cases, if you want to stop somebody, you need, at minimum, reasonable, articulable suspicion, which the State did not provide here. Unless the Court has any further questions? Thank you. All right. Thank you, Mr. Wehmer. And thank you both for your arguments here this morning and your briefs. We will take the case under advisement.